In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1532

In re Richard C. Barnes,

Debtor.

Appeal of Thomas J. VanKirk

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 00 C 453--William C. Lee, Chief Judge.

Argued September 28, 2001--Decided January 9, 2002


   Before Posner, Easterbrook, and Kanne,
Circuit Judges.

   Posner, Circuit Judge.  The question
presented by this bankruptcy appeal is
whether Indiana permits an involuntary
lien to be obtained in a liquor license.
The appellant, VanKirk, was an employee
of a bar owned by the debtor, Barnes
(actually a predecessor of Barnes, but we
can ignore that detail). VanKirk had
filed a notice of employee's lien on "any
and all assets" of Barnes for unpaid
wages and later had obtained from an
Indiana court a default judgment against
Barnes foreclosing his lien. VanKirk
asked the court to appoint a receiver to
operate the bar for his benefit and that
of the bar's other creditors, but before
the receiver could be appointed Barnes
declared bankruptcy. The trustee in
bankruptcy sold the bar's liquor license.
VanKirk then brought this adversary
proceeding to enforce his lien. He seeks
so much of the proceeds of the sale of
the license as are necessary to pay his
claim, subject to the rights of any
lienors who are senior to him. The
bankruptcy court, seconded by the
district court, ruled that a liquor
license is not property under Indiana law
and therefore VanKirk could not obtain a
lien on it.
   Indiana's alcoholic-beverages statute
and the cases interpreting it are indeed
explicit that liquor licenses are not
"property." Ind. Code sec. 7.1-3-1-2;
State ex rel. Harris v. Superior Court,
197 N.E.2d 634, 640 (Ind. 1964); Vanek v.

Indiana National Bank, 540 N.E.2d 81, 84 (Ind. App. 1989), aff'd, 551 N.E.2d 1134 (Ind. 1990) (per curiam); Dagley v. Incorporated Town of Fairview Park, 371 N.E.2d 1338, 1341 (Ind. App. 1978). Yet Barnes's liquor license was treated as property of his estate by the trustee, who sold the license and is treating the proceeds as property of the estate too. This treatment is clearly correct, as well as not contested by any party. Property is broadly defined by the Bankruptcy Code, see 11 U.S.C. sec. 541(a)(1), and certainly includes a valuable, marketable asset. "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of sec. 541." In re Carousel Int'l Corp., 89 F.3d 359, 362 (7th Cir. 1996); see also Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 241 (3d Cir. 2001). True, a liquor license may not be transferred without the approval of the state's Alcoholic Beverage Commission, Ind. Code sec. 7.1-3-24-1; 905 Ind. Admin. Code 1-17-4, and can be revoked upon proof of misconduct. Ind. Code sec. 7.1-3-23-2; Indiana Alcoholic Beverage Comm'n v. Dowland, 580 N.E.2d 724, 726 (Ind. App. 1991); Indiana Alcoholic Beverage Comm'n v. State ex rel. Harmon, 355 N.E.2d 450, 454 (Ind. App. 1976). But these are not unusual conditions on property; the sale of many goods require government approval and of course property can be taken away from a person for various reasons, for example because it has become a public or private nuisance. It is no surprise, therefore, that the few cases to address the issue hold that a liquor license, provided it is salable, is indeed property within the meaning of section 541 of the Bankruptcy Code. In re Nejberger, 934 F.2d 1300, 1302 (3d Cir. 1991); In re Terwilliger's Catering Plus, Inc., 911 F.2d 1168, 1171-72 (6th Cir. 1990); In re Benz, 218 Fed. 50, 54 (3d Cir. 1914); Fisher v. Cushman, 103 Fed. 860, 864-65 (1st Cir. 1900). None is an Indiana case, but the trustee does not argue that Indiana's liquor law is atypical.

Two Indiana cases say that, in addition to requiring approval to transfer and being revocable, liquor licenses may not be used to secure a loan. Cole v. Loman & Gray, Inc., 713 N.E.2d 901, 905 n. 3 (Ind. App. 1999); Vanek v. Indiana

National Bank, supra, 540 N.E.2d at 84; see also In re Eagles Nest, Inc., 57 B.R. 337, 340 (Bankr. N.D. Ind. 1986). The only reason given for this conclusion, and it is given only by bankruptcy judges, see id. at 341; In re Ratcliff Enterprises, Inc., 44 B.R. 778, 781 (Bankr. E.D. Mich. 1984), is that the state wants to limit the distribution of liquor (which is in fact a stated policy of Indiana, see Ind. Code sec. 7.1-1-1-1(b)) by making it more difficult for owners of establishments at which liquor is served to expand their business by borrowing. This would be an exceedingly odd method of regulating the liquor business, especially since the owner of such an establishment is free to pledge his accounts receivable to secure a loan, though there is the difference that the license may capitalize future expected earnings as well as current receivables and so may secure a larger loan. No Indiana court has endorsed the reasoning of the bankruptcy judges, and the Indiana Supreme Court has not endorsed the conclusion (that a voluntary lien cannot be obtained in a liquor license) reached in Cole or Vanek. (Its summary affirmance of Vanek does not necessarily imply adoption of Vanek's dictum.) Nor is there anything in the statute to support such a conclusion.

Moreover, all these are cases about voluntary liens, and there is a difference well recognized in bankruptcy and secured-transactions law between a voluntary and an involuntary lien. The former, sometimes called a consensual lien or a security interest, is the type of lien that you give someone to secure his extension of credit to you; the latter, sometimes called a nonconsensual lien and illustrated by the judicial lien in this case, arises from your having de faulted on an obligation to the tax authorities, employees, or other involuntary creditors. See 11 U.S.C. sec.sec. 101(36), (51), (53); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240 (1989); In re Gledhill, 164 F.3d 1338, 1341-42 (10th Cir. 1999); Rankin v. DeSarno, 89 F.3d 1123, 1127 (3d Cir. 1996); In re Brentwood Outpatient, Ltd., 43 F.3d 256, 259 (6th Cir. 1994). As these cases illustrate, they are not identical legal interests. So what this case comes down to is whether Indiana permits an involuntary lien to be

obtained in a liquor license. (It may well permit voluntary liens as well, if Vanek and Cole are incorrect, as they may well be; but we need not decide that in this case.) If Indiana does permit an involuntary lien to be obtained in a liquor license, then the trustee in bankruptcy could not avoid the lien by selling his debtor's license, e.g., In re Merchants Grain, Inc., 93 F.3d 1347, 1352-53 (7th Cir. 1996); In re Florline Corp., 190 B.R. 342, 344-46 (Bankr. S.D. Ind. 1996), and VanKirk can, under standard principles of equity, impress a constructive trust on the proceeds of the sale. Melloh v. Gladis, 309 N.E.2d 433, 438-39 (Ind. 1974); Estates of Kalwitz v. Kalwitz, 717 N.E.2d 904, 912 (Ind. App. 1999); Rollins v. Metropolitan Life Ins. Co., 912 F.2d 911, 914 (7th Cir. 1990) (Indiana law); see also Harris Trust & Savings Bank v. Salomon Smith Barney Inc., 530 U.S. 238, 250-51 (2000); Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Wells, 213 F.3d 398, 401 (7th Cir. 2000); Beatty v. Guggenheim Exploration Co., 122 N.E. 378, 386 (N.Y. 1919) (Cardozo, J.).

There are no cases on whether Indiana permits an involuntary lien to be obtained in a liquor license, and the trustee's lawyer was unable to give us any reason why Indiana would not permit this. The only rationale that has been offered for not permitting voluntary liens on liquor licenses (and that a feeble one) is inapplicable, as it is hardly plausible that immunity from involuntary liens would significantly increase liquor licensees' access to capital markets; and none other has been suggested. Not to permit involuntary liens in liquor licenses, rather than discouraging liquor licensees from borrowing, would give them a privileged status; it would be harder, for example, to collect taxes or enforce judgments against them than against other businessmen. Cf. In re Brentwood Outpatient, Ltd., supra, 43 F.3d at 259-60.

It would be illuminating to know whether Indiana permits involuntary liens on other licenses, but neither the bankruptcy judge nor the district judge, nor the parties, address the question, and our own research has disclosed no applicable statutes or cases. The closest

is a case that declined to decide whether a mechanic's lien could be imposed on a permit issued by the Indiana Department of Transportation to operate a natural-gas storage field. McCartin McAuliffe Mechanical Contractor, Inc. v. Midwest Gas Storage, Inc., 685 N.E.2d 165, 168 n. 6 (Ind. App. 1997). The case law of other states allows the imposition of involuntary liens or lien-like interests on liquor licenses (we have found no cases involving other types of government permit), under statutes similar to Indiana's. See Dodds v. Shamer, 663 A.2d 1318, 1326 (Md. 1995); In re What D'Ya Call It, Inc., 730 P.2d 467, 468 (N.M. 1986); In re Kimura, 969 F.2d 806, 813 (9th Cir. 1992); In re Stone, 6 F.3d 581, 583-84 (9th Cir. 1993); In re Farmers Markets Inc., 792 F.2d 1400, 1403 (9th Cir. 1986); 632 Metacom Associates v. Pub Dennis of Warren, Inc., 591 A.2d 379, 383-84 (R.I. 1991); P.M.D. Corp., Inc. v. Hyland-Helstrom Enterprises, Inc., 579 N.E.2d 779, 781 (Ohio App. 1990). These cases are not elaborately reasoned, but maybe that is because no one can think of a good reason why, given that liquor licenses are salable, they can't be used as security, especially for satisfying the claims of involuntary creditors. If the Indiana statute forbade such use, well and good; but to interpolate such a prohibition with no reason to do so and no support in case law (apart from an unelaborated assertion in the pair of Indiana intermediate appellate opinions that we cited, and a couple of bankruptcy opinions--all distinguishable as involving voluntary liens) for doing so would make no sense that we can see.

Reversed.